**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Christopher DOTY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 2010.

Filed June 9, 2010.

---

Tina M. Fryling, Public Defender, and Kenneth A. Bickel, Erie, for appellant.

Erin C. Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

BEFORE: MUSMANNO, ALLEN, JJ. and McEWEN, P.J.E.

OPINION BY MUSMANNO, J.:

¶ 1 Christopher Doty ("Doty") appeals from the judgment of sentence entered following his conviction of criminal conspiracy and aggravated assault.[1] We quash the appeal.

¶ 2 During the early evening hours of April, 24, 2008, Kyle Miles ("Miles") walked with a female companion and her three children down Wallace Street in Erie, Pennsylvania. As Miles approached the corner of Wallace and East 7th Streets, Kelly Gore ("Gore") stopped Miles to complain of rumors that had been circulating about her. During Miles's brief discussion with Gore, Lionel Hamer ("Hamer") approached and leaned against a nearby stop sign. Doty and Gregory Crosby ("Crosby") also stood nearby. As Miles and his companions walked away, Doty, Hamer and Crosby followed.

¶ 3 Having followed Miles as he turned to walk up East 7th Street, Crosby approached Miles and asked, "[W]hat was that shit you were saying about my cousin?" N.T., 1/16/09, at 179. When Miles failed to respond, Crosby struck Miles. The two men exchanged punches in the middle of the street, after which Miles attempted to flee his attackers. Doty, Crosby and Hamer gave chase, eventually attacking Miles in front of his house. Doty, Crosby and Hamer savagely beat and kicked Miles, rendering him bloody and unconscious.

¶ 4 Before Miles fled to his house, Miles's female companion telephoned 9–1–

---

1. 18 Pa.C.S.A. §§ 903, 2702.

1. When police officers subsequently arrived at the scene, they found Miles lying in front of his house, bleeding from the mouth and unconscious. As a result of the beating, Miles remained hospitalized in a coma for six weeks. Miles continues to suffer from serious cognitive and speech impairment, right arm paralysis, impaired vision and memory loss.

¶ 5 One day later, in a police interview, Doty admitted to his participation in the altercation. After his arrest, Doty filed an Omnibus Pre-trial Motion, which the trial court denied. On January 20, 2009, after a joint trial with Hamer and Crosby, the jury found the co-defendants guilty of conspiracy and aggravated assault. The trial court scheduled Doty's sentencing to take place on March 19, 2009.

¶ 6 Notwithstanding his scheduled sentencing date and the bond posted to secure his presence, Doty failed to appear at sentencing. The trial court sentenced Doty, *in absentia*, to a prison term of 66 to 136 months for his conviction of aggravated assault. For his conviction of criminal conspiracy, the trial court sentenced Doty to a consecutive prison term of 48 to 96 months. The trial court imposed fees and costs, and further ordered Doty to pay $1,500,000.00 in restitution. On March 29, 2009, the trial court issued a bench warrant for Doty. The next day, Doty's counsel filed a post-sentence Motion, which the trial court subsequently denied.

¶ 7 During the 30–day appeal period, on April 21, 2009, Doty's counsel filed a Notice of appeal on Doty's behalf. The trial court Ordered Doty to file a concise statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Doty's counsel complied with the trial court's Order. At the time the trial court filed its Rule 1925(a) Opinion, on June 23, 2009, Doty remained a fugitive. However, according to Doty's appellate brief, law enforcement authorities apprehended Doty in another state.

¶ 8 In this appeal, Doty presents the following claims for our review:

[1.] Whether [Doty] waived his ability to file an appeal in this case and make the arguments set forth herein when he failed to appear for his sentencing[?]

[2.] Whether the use of transcripts, rather than the video of [Doty's] statement, violated the "best evidence" rule and Rule 1002 of the Pennsylvania Rules of Evidence[?]

[3.] Whether the trial court erred as a matter of law and/or abused its discretion in ordering [Doty] to pay $1,500,000.00 in restitution[?]

[4.] Whether the trial court erred as a matter of law and/or abused its discretion in sentencing [Doty] in the aggravated range of the sentencing guidelines and to consecutive terms of imprisonment[?]

Brief for Appellant at 3.

¶ 9 Since Doty remained a fugitive throughout the 30–day appeal period, Doty first acknowledges that he may be ineligible to file a direct appeal. *Id.* at 9–10. However, Doty argues that one of his claims, his challenge to the trial court's sentence of restitution, implicates the legality of that sentence and, therefore, cannot be waived. *Id.* at 10. Doty also points out that the trial court "did not specifically state that [Doty's] fugitive status definitely precludes him from being able to continue his appeal." *Id.*

▮▮▮▮ ¶ 10 Guaranteed by article 5, section 9 of the Pennsylvania Constitution,[2]

---

2. Article 5, section 9 of the Pennsylvania Constitution provides as follows:

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of

the constitutional right to appeal "is a personal right which may be relinquished only through a knowing, voluntary and intelligent waiver." *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346, 347 (1984) (citing *Commonwealth v. Cathey*, 477 Pa. 446, 384 A.2d 589 (1978); *Commonwealth v. Jones*, 447 Pa. 228, 286 A.2d 892 (1971); *Commonwealth v. Maloy*, 438 Pa. 261, 264 A.2d 697 (1970); *Commonwealth ex rel. Robinson v. Myers*, 427 Pa. 104, 233 A.2d 220 (1967); *Commonwealth ex rel. Edowski v. Maroney*, 423 Pa. 229, 223 A.2d 749 (1966)). However, as we shall discuss infra, a defendant who is a fugitive from justice during the appellate process may forfeit the right to appellate review.

¶ 11 Our Supreme Court has recognized that "the right to appeal is conditioned upon compliance with the procedures established by [the Pennsylvania Supreme Court], and a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision." *Passaro*, 476 A.2d at 347. In *Passaro*, the defendant escaped from custody after filing his appellate brief, but before the disposition of his appeal. *Id.* at 347–48. On the basis of his fugitive status, a panel of this Court quashed the defendant's appeal. *Id.* at 348. After his capture, the defendant petitioned for reinstatement of his direct appeal rights. *Id.* When this Court denied the defendant's petition, he presented his petition for reinstatement to the Pennsylvania Supreme Court. *Id.*

¶ 12 Notwithstanding the defendant's return to the jurisdiction of the courts, the Supreme Court held that "a defendant who deliberately chooses to bypass the orderly procedures afforded one convicted of a crime for challenging his conviction is bound by the consequences of his decision." *Id.* Thus, "a defendant who elects to escape from custody forfeits his right to appellate review. It would be unseemly to permit a defendant who has rejected the appellate process in favor of escape to resume his appeal merely because his escape proved unsuccessful." *Id.* at 349. On this basis, the Supreme Court denied the defendant's Petition to reinstate his direct appeal. *Id.*

¶ 13 Escape, however, does not result in the forfeiture of *all* appellate review. In *Commonwealth v. Judge*, 530 Pa. 403, 609 A.2d 785 (1992) (*Judge I* ), a capital defendant escaped two days after being sentenced to death and, at the time of his direct appeal, had not been returned to custody in Pennsylvania. *Id.* at 786. The defendant, while still a fugitive, timely filed a *pro se* notice of appeal. *Id.* On direct appeal, the Pennsylvania Supreme Court entered a *per curiam* order limiting its review to the sufficiency of the evidence, as required by *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), and the statutory review of death sentences mandated by 42 Pa.C.S.A. § 9711(h).[3] *Judge I*, 609 A.2d at 786 n. 4. When the defendant attempted to raise additional issues in his appellate brief, the

---

appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Pa. Const. art. 5, § 9.

**3.** At the time of the defendant's conviction in *Judge I*, section 9711(h) required automatic review of death sentences. The statute re-

quired a sentence of death to be affirmed unless the Supreme Court determines that "the sentence of death was the product of passion, prejudice or any other arbitrary factor[,] the evidence fails to support the finding of at least one aggravating circumstance specified" by statute, or whether the defendant's death sentence was "excessive or disproportionate to the penalty imposed in similar cases." 42 Pa.C.S.A. § 9711(h)(3).

Supreme Court, applying *Passaro,* again limited its review to the sufficiency of the evidence and the review required by section 9711(h). *Id.* at 786–87.

¶ 14 Judicial interpretations of *Passaro* and its effect upon a fugitive's appeal rights led the Supreme Court to modify its holding. In *Commonwealth v. Deemer,* 550 Pa. 290, 705 A.2d 827, 829 (1997), the Supreme Court set forth the following analysis to be employed by Pennsylvania courts in determining a fugitive's appeal rights:

> If [the defendant] became a fugitive between post-trial motions and an appeal and he returns before the time for appeal has expired and files an appeal, he should be allowed to appeal. If he returns after the time for filing an appeal has elapsed, his request to file an appeal should be denied. If he becomes a fugitive after an appeal has been filed, his ·appeal should be decided and any fugitive status should be addressed separately. **In short, a fugitive who returns to court should be allowed to take the system of criminal justice as he finds it upon his return: if time for filing has elapsed, he may not file; if it has not, he may.**

*Id.* at 829 (emphasis added). Thus, "a fugitive who has returned to the jurisdiction of the court should be allowed to exercise his post-trial rights in the same manner he would have done had he not become a fugitive." *Id.*

¶ 15 On direct appeal, therefore, a defendant's status during the 30–day appeal period controls whether an appellate court will hear his appeal. *Id.* Further, the defendant's status during the appeal period may impact his right to collateral relief. In *Commonwealth v. Judge (Judge II),* 568 Pa.377, 797 A.2d 250 (2002) the appellant, who had forfeited his right to a direct

appeal because of his fugitive status, *see Judge I, supra,* had sought collateral relief through a petition filed pursuant to the Post Conviction Relief Act ("PCRA").[4] The PCRA court dismissed the PCRA petition and on appeal, the appellant challenged the PCRA court's determination that he had waived all review of his convictions by fleeing prior to the direct appeal. *See Judge II,* 797 A.2d at 257–58. The Supreme Court upheld the denial of PCRA relief, citing the petitioner's previous forfeiture of his appellate rights as controlling. *Id.* at 259, 260. In so holding, the Supreme Court opined that "we refuse to permit Appellant to resurrect issues that were raised, or which could have been raised and would have been addressed, on direct appeal, had Appellant demonstrated some kind of respect for the legal process." *Id.* at 260 (footnotes omitted).

¶ 16 Here, we are presented with a direct appeal, filed by counsel within the 30–day appeal period, while Doty remained a fugitive. To avoid *Passaro, Deemer, Judge II,* and their progeny, Doty attempts to salvage one of his claims by directing our attention to well-established case law holding that a challenge to the legality of a sentence is never waived. *See Commonwealth v. Berry,* 877 A.2d 479, 482 (Pa.Super.2005) (recognizing that challenges to the legality of the sentence are never waived, so long as the court has jurisdiction to hear the claim). Doty's claim, however, is without legal support.

¶ 17 Notwithstanding Doty's citation to cases prohibiting the waiver of a challenge to the legality of a sentence, Doty fails to acknowledge the legal distinction between *waiver* and *forfeiture.* In *Commonwealth v. Lucarelli,* 601 Pa. 185, 971 A.2d 1173 (2009), the Pennsylvania Supreme Court explained this distinction as follows:

**4.** 42 Pa.C.S.A. §§ 9541–9546.

Like the Superior Court in *Commonwealth v. Thomas*, 2005 PA Super 245, 879 A.2d 246, 257–59 (Pa.Super.2005), we find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in *United States v. Goldberg*, 67 F.3d 1092, 1099–1101 (3d Cir.1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir.2004) (quoting *Goldberg, supra* at 1100–02). *See also Commonwealth v. Coleman*, 2006 PA Super 214, 905 A.2d 1003, 1006–08 (Pa.Super.2006) (affirming a finding of forfeiture where defendant, who had the means to retain counsel, appeared without counsel or engaged in behavior that forced counsel to withdraw).

*Lucarelli*, 971 A.2d at 1179.

¶ 18 Cognizant of the legal distinction discussed in *Lucarelli*, and applying the Supreme Court's analysis in *Deemer*, we conclude that Doty's challenge to the legality of his sentence, while not waivable, was forfeited through his "extremely serious misconduct" during his direct appeal. *See Lucarelli*, 971 A.2d at 1179. In fact, all of claims raised in the instant appeal were forfeited because of Doty's fugitive status throughout the 30–day appeal period. *See Deemer*, 705 A.2d at 829 (stating that "a fugitive who returns to court should be allowed to take the system of criminal justice as he finds it upon his return: if time for filing has elapsed, he may not file [an appeal]").

¶ 19 The fact that Doty's counsel filed a Notice of appeal during the appeal period is of no moment. Doty could not resurrect his appellate rights because he failed to return to the court's jurisdiction prior to the expiration of the appeal period. *Id.* (holding that if a fugitive returns before the appeal deadline, he regains the appellate right and may, therefore, file a timely appeal); *Commonwealth v. Hunter*, 952 A.2d 1177, 1178 (Pa.Super.2008) (concluding that because the appellant remained a fugitive from the time of his scheduled sentencing until after his counsel had filed an appeal and the appeal deadline passed, he is not entitled to pursue an appeal).

¶ 20 Because Doty forfeited his right to appellate review of all claims raised in the instant appeal, we quash his appeal.

¶ 21 Appeal quashed.